FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2017 MAY -5  AM 9: 53

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

WELLS FARGO BANK, N.A.,

      Plaintiff,

vs.

GABRIELLE R. BUSTIN, individually, and
BRENDA PETTIS, individually,

      Defendants.

_____/

5:17-cv-199-Oc-30 PRL

### PLAINTIFF'S, WELLS FARGO BANK N.A.,
### COMPLAINT FOR INTERPLEADER

      Plaintiff, WELLS FARGO BANK, N.A. ("Wells Fargo"), by and through its undersigned attorneys, Fox Rothschild LLP,  and pursuant to Rule 22 of the Federal Rules of Civil Procedure, hereby files this Complaint for Interpleader against Defendants, Gabrielle R. Bustin ("Bustin") and Brenda Pettis ("Pettis") (collectively, the "Claimants"), and alleges as follows:

### PARTIES

      1.     Wells Fargo is a national banking association organized pursuant to the laws of the United States, with its headquarters located in Sioux Falls, South Dakota.  Accordingly, Wells Fargo is a citizen of South Dakota.

      2.     Upon information and belief, Bustin is an individual citizen of and domiciled in Marion County, Florida.

      3.     Upon information and belief, Pettis is an individual citizen of and domiciled in the Ostego County, Michigan.

4.     Hester Mooney (the "Deceased"), at the time of her passing, was an individual citizen of and domiciled in Marion County, Florida.

## JURISDICTION AND VENUE

5.     Wells Fargo brings this action of interpleader of a sum that exceeds $500.00, exclusive of interest and costs.

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1335 and 2361, because there is diversity of citizenship between the Claimants, and the amount in controversy in this action exceeds $500.00, exclusive of interest and costs.

7.     Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b)(2), because this District is where a substantial part of the events giving rise to the cause of action set forth in this Complaint occurred.

## FACTUAL ALLEGATIONS

8.     At all times material to this action, the Deceased maintained three accounts with Wells Fargo: (i) Portfolio Checking Account XXXXXX7757 (The "7757 Checking Account"); (ii) High Yield Savings Account XXXXXX0166 (the "Savings Account"); and (iii) Preferred Checking Account XXXXXX9293 (the "9293 Checking Account"). These three accounts are collectively referred to herein as the "Deceased Accounts."

9.     On or about July 6, 2016, the Deceased executed a Durable Power of Attorney (the "Durable POA") under which she appointed Bustin as her attorney-in-fact. A true and correct copy of the Durable POA is attached as **Exhibit "A."**

10.     At all times material to this action, Bustin was the attorney-in-fact and Pettis was the Payable on Death beneficiary for the 7757 Checking Account and the Savings Account.

2

11.     At all times material to this action, the 9293 Checking Account was Jointly held in the names of the Deceased and Bustin, as owners.

12.     On February 19, 2017, the Deceased died in Ocala, Florida.

13.     Subsequent to February 19, 2017, seventeen checks (the "Checks") dated on or prior to February 19, 2017, written from the 7757 Checking Account were paid by Wells Fargo, including, but not limited to, Check No. 1028 made payable to Gabrielle Bustin in the amount of $18,500.00.

14.     On February 21, 2017, a check in the amount of $18,500.00 was deposited into the 9293 Checking Account. **A copy of Check No. 1028 is attached as Exhibit "B."**

15.     On February 28, 2017, $18,000.00 was transferred online from the 9293 Checking Account to Wells Fargo Essential Checking Account XXXXXX6876 held in the name of Gabrielle Bustin (the "Bustin's Personal Checking Account").

16.     Pettis claims that Bustin wrote the Checks subsequent to February 19, 2017, and the Checks should not have been paid.

17.     Bustin claims the Checks were legitimate and appropriately issued by her.

18.     Based on the divergent claims and demands regarding the Checks, Wells Fargo restrained the total sum of $18,744.34 as follows: (i) $18,171.72 in Bustin's Personal Checking Account; and (ii) $572.62 in the 9293 Checking Account (collectively, the "Restrained Proceeds").

19.     However, Checking Account 7757 has an overdraft balance in the amount of $834.44 (the "Overdraft Balance").

20. Wells Fargo now seeks to interplead the Restrained Proceeds into the Court Registry to allow the Claimants to make their respective legal claims for access to those Restrained Proceeds.

21. Wells Fargo has retained the undersigned attorneys to represent it in this action and has agreed to pay them a reasonable fee.

22. Wells Fargo is entitled to recover its reasonable attorneys' fees and costs in this matter pursuant to applicable law.

<u>**Count I - Interpleader**</u>

23. Wells Fargo realleges paragraphs 1 through 22 above as if more fully set forth herein.

24. At this time, there exist potentially rival, adverse and conflicting claims between the Claimants as to the rightful owner of the Restrained Proceeds.

25. Wells Fargo claims an interest in the Restrained Proceeds, only to the extent of the Overdraft Balance, and has done nothing to create the dispute over the entitlement to the Restrained Proceeds.

26. By reason of the conflicting claims for access to the Restrained Proceeds, Wells Fargo is in doubt as to who is entitled to the Restrained Proceeds, is in danger of being exposed to double or multiple liability, and cannot safely remit or release the Restrained Proceeds without the aid of this Court.

27. Wells Fargo is ready, willing, and able to deposit the Restrained Proceeds into the Court Registry, or to any other custodian or trustee the Court deems proper.

**WHEREFORE**, Plaintiff, Wells Fargo Bank, N.A., respectfully requests the following relief:

A.    That this Court take jurisdiction over the parties, and permit Wells Fargo to deposit the Restrained Proceeds with the Registry of the Court;

B.    That this Court issue an order requiring the parties to the above-styled cause to interplead as to their rights and settle or litigate amongst themselves their claims and rights to the Restrained Proceeds;

C.    That Wells Fargo be discharged from all liability to any of the parties to this action concerning Wells Fargo's obligations in connection with the Restrained Proceeds and the Deceased Accounts.

D.    That the Claimants be enjoined and prohibited from instituting any actions against Wells Fargo and/or its agents, affiliates, employees and servants, regarding the Restrained Proceeds and the Deceased Accounts.

E.    That Wells Fargo be awarded costs and reasonable attorneys' fees for bringing this action, together with the Overdraft Balance, all to be paid from the Restrained Proceeds.

F.    That Wells Fargo be dismissed as a party to this action; and

G.    For such other and further relief as this Court deems just, equitable and proper.

Dated: May 4, 2017
West Palm Beach, Florida

FOX ROTHSCHILD, LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, Florida 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602

By: /s/ Amy S. Rubin
Amy S. Rubin (Fla. Bar No.: 476048)
arubin@foxrothschild.com

*Attorneys for Plaintiff, Wells Fargo Bank, N.A.*

5

5284480160
7724087757

# Durable Power of Attorney

**NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS DURABLE POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.**

**Definition of Agent**
As used in this document, the term "Agent" shall include all agent(s), attorney(s)-in-fact, attorneys-in-fact / agents, and mandatary or mandataries who are appointed herein.

**TO ALL PERSONS,** be it known, that I, _Hester McClanahan Money_ the undersigned Principal, who resides at _14411 SE 90th Terrae 14385 Old Paw Paw Rd._ City of _Summerfield / Hurley_ , County of _Marion / Buchanan_, State of _Fl / VA_ , do hereby appoint _Gabrielle Rene Burton_ as my Agent, and _____ as my Agent, who ☐ must act jointly ☐ may act separately on my behalf.

At the time of the execution of this Durable Power of Attorney,
_Gabrielle Rene Burton_ resides at _8900 S. Hwy 441 Lot 2_ , City of _Ocala Fl._ , County of _Marion_ , State of _Florida_ .

At the time of the execution of this Durable Power of Attorney,
_____ resides at _____ ; City of _____ , County of _____ , State of _____ .

If one of my Agents is unable to serve for any reason, ☐ I authorize the remaining named Agent to act as my sole Agent OR ☐ I designate _____ , City of _____ , residing at _____ , County of _____ , State of _____ , to serve in that person's place.

If both of my Agents are unable to serve for any reason, I designate _____ , residing at _____ , City of _____ , County of _____ , State of _____ , as my Successor Agent.

©SmartLegalForms

LF20S Durable Power of Attorney 6-15, Pg. 1 of 7



EXHIBIT
A

5284.48016.G
772.6087787

**Grant of General Authority**

My Agent shall care for, manage, control, and handle all of my business, financial, property and personal affairs in my name, place and stead in as full and complete a manner in which I myself could do, if I were personally present, with respect to the following matters, to the extent that I am permitted by law to act through such a representative and subject to any limitations on or additions to the specified powers inserted after the following:

(NOTICE: The Principal must write his or her initials in the corresponding blank space for each of the subdivisions (A) through (M) below for which the Principal WANTS to give the Agent authority. If the corresponding blank space for any particular subdivision is NOT initialled, NO AUTHORITY WILL BE GRANTED for those matters specified in the subdivision. ALTERNATIVELY, the letter corresponding to each power the Principal wishes to grant has been referenced in subdivision "(N)", and the Principal may initial in the blank space to the left of subdivision "(N)" in order to grant each of the powers so indicated.)

(A) Real property transactions. To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild, improve, manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner deal with all or any part of any interest in real property whatsoever, including specifically, but without limitation, real property lying and being situated in the State of ___Florida and Virginia___, under such terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt, and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to secure debt.

(B) Tangible personal property transactions. To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the State of ___Florida and Virginia___ or any applicable state, or otherwise hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

(C) Stock and bond transactions. To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business, association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

(D) Commodity and option transactions. To buy, sell, exchange, assign, convey, settle and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the Principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the Principal could if present and under no disability.

520 4480166
772 6087757

(E) Banking and other financial institution transactions. To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which I might have access.

(F) Business operating transactions. To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the Principal could if present and under no disability.

(G) Insurance and annuity transactions. To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate or change the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts, unless the Agent is my spouse or only child.

(H) Estate, trust and other beneficiary transactions. To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the Principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the Principal that terminates at the death of the Principal and is then distributable to the legal representative of the estate of the Principal; and, in general, exercise all powers with respect to estates and trusts which the Principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the Principal or require the trustee of any trust for the benefit of the Principal to pay income or Principal to the Agent unless specific authority to that end is given.

(I) Claims and litigation. To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

5284480166
7726087757

(J) **Personal and family maintenance.** To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

(K) **Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.** To prepare, sign and file any claim or application for Social Security, unemployment or military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the Principal could exercise if present and under no disability.

(L) **Retirement plan transactions.** To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the Principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the Principal could if present and under no disability.

(M) **Tax matters.** To prepare, to make elections, to execute and to file all tax, Social Security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

(N) **ALL OF THE MATTERS LISTED ABOVE. YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).**

**Grant of Specific Authority (Optional)**

My Agent MAY NOT do any of the following specific acts for me UNLESS I have INITIALED the specific authority listed below:

(CAUTION: Granting any of the following will give your Agent the authority to take actions that could significantly reduce your property or change how your property is distributed at your death. INITIAL ONLY the specific authority you WANT to give your Agent.)

Create, amend, revoke or terminate an inter vivos trust.

Make a gift.

Create or change rights of survivorship.

Create or change a beneficiary designation.

Authorize another person to exercise the authority granted under this Durable Power of Attorney.

1

528 4480166
7726087757

(K) Waive the Principal's right to be a beneficiary of a joint and survivor annuity, including a survivor benefit under a retirement plan.
(L) Exercise fiduciary powers that the Principal has authority to delegate.
(M) Disclaim or refuse an interest in property, including a power of appointment.

**Limitation on Agent's Authority**
An Agent that is not my ancestor, spouse or descendant MAY NOT use my property to benefit the Agent or a person to whom the Agent owes an obligation of support unless I have included that authority in the Special Instructions.

**Special Instructions (Optional)**
Additional powers, if any, that are not inconsistent with the other provisions of this Durable Power of Attorney: Power to act Just like me in all areas of business. (Transfering property to her Name)

The powers granted hereinabove shall not include the following powers or shall be modified or limited in the following particulars:

None

Additional powers, if any, granted to the Agent with respect to any power listed above and not eliminated/struck out by the Principal:

**Special Instructions for Gifts**
Special instructions applicable to gifts (initial in front of the following sentence to have it apply):

(____) I grant my Agent the power to apply my property to make gifts to individuals, charities, or to the Agent, up to the amount of $500 per year, per individual or entity, without signature of the Principal, as the Agent determines to be in the Principal's best interest.

Authorization for an Agent to make gifts or transfers of $500 or more requires the Principal to execute a Major Gifts Rider at the same time as the Durable Power of Attorney document.

(____) I grant my Agent the power to make major gifts and transfers of my property set forth under the Major Gifts Rider.

**Nomination of Guardian or Conservator (Optional)**
In the event that a court decides that it is necessary to appoint a Guardian of my person or Conservator of my estate, I hereby nominate ___Gabrielle Rose Burton___ , who resides at __8900 S. Hwy 441 lot 2__ , City of __Ocala__ , County of __Marion__ , State of __Fl.__ , to be considered by the court for appointment to serve as my Guardian or Conservator, or in any similar representative capacity.

5284480180
7726087757

**Effective Date/Durable Provision**

This Durable Power of Attorney shall be effective immediately, shall not be affected by any lapse of time, and shall not be affected by the subsequent incapacity of the Principal except as provided by statute in the State of _Florida and Virginia_, and all acts done by the Agent under the power granted herein during any period of the Principal's disability or incapacity shall have the same effect and inure to the benefit of and bind the Principal and Principal's successors in interest as if the Principal were competent and not disabled.

My Agent hereby accepts this appointment subject to its terms and agrees to act and perform in the said fiduciary capacity and observe the standards of care applicable to trustees as described by relevant _Florida and or Virginia_ statute consistent with his, her, or their best discretion deem advisable, and I affirm and ratify all acts so undertaken.

If the Agent is a corporate Agent, the Agent shall not use my assets for its benefit, nor the benefit of its officers or directors.

If this Durable Power of Attorney is revoked or terminated, such revocation or termination for any reason in accordance with law shall be ineffective as to any Agent unless and until actual notice or knowledge of such revocation or termination shall have been received by the Agent.

My subsequent death shall not revoke or terminate the agency granted herein as to my Agent who, without actual knowledge of my death, acts in good faith under this Durable Power of Attorney. Any action so taken, unless otherwise invalid or unenforceable, shall bind my successors in interest.

**Notice to Third Parties**

To induce any third-party to act hereunder, I hereby agree that any third-party receiving a duly executed copy or facsimile of this instrument may act hereunder, and that revocation or termination shall have been received by such third-party, and I for myself and for my heirs, executors, legal representatives and assigns, hereby agree to indemnify and hold harmless any such third-party from and against any and all claims which may arise against such third-party by reason of such third-party having relied on the provisions of this instrument.

THIS DURABLE POWER OF ATTORNEY MAY BE REVOKED OR AMENDED IN WRITING BY ME AT ANY TIME.

X_____        7/6/16 _____ (date)

_____, Principal

_____        7/6/16 _____ (date)
**First Witness**

_____        7/6/16 _____ (date)
**Second Witness**

©SmartLegalForms                                    LF205 Durable Power of Attorney 6-15, Pg. 6 of 7

5284480186
7726087757

> A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _Florida_ )

COUNTY OF _Marion_ )

On _July 16th_ , 20 _16_ , before me, _Carrie M. Law_ , a Notary Public, personally appeared _Hester Mooney_ , as Principal, and _Shaunda Mayfield_ , as Witness, and _Larry Church_ , as Witness, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Florida_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Carrie M Law_

Signature of Notary

Affiant ____ Known ____ Produced ID _×_

Type of ID _Florida Identification Card_

(Seal)

> CARRIE M. LAW
> NOTARY PUBLIC
> STATE OF FLORIDA
> Comm# FF140957
> Expires 7/10/2018

## AGENT'S SIGNATURE AND ACKNOWLEDGMENT

**First Agent Acknowledgement**

I, _Gabrielle Rose Burton_ , am the person identified as the Agent for the Principal named in this document and acknowledge my legal duties.

_7/16/16_
Date

_Gabrielle Rose Burton_
Signature

**Second Agent Acknowledgement (if applicable)**

I, _____ , am the person identified as the Agent for the Principal named in this document and acknowledge my legal duties.

_7/16/16_
Date

_David Burton_
Signature

5284480166
7726087757

## AGENT'S CERTIFICATION AS TO THE VALIDITY OF POWER OF ATTORNEY
## AND AGENT'S AUTHORITY

STATE OF _Florida and or Virginia_

COUNTY OF _Marion  Buchanan_

I, _Gabrielle Rene' Bustin_, certify under penalty of perjury that _Hester McClanahan Mary_
granted me authority as Agent or Successor Agent in a power of attorney dated _7/6/16_.

I further certify that to my knowledge:

(1) the Principal is alive and has not revoked the Power of Attorney or my authority to act under the
Power of Attorney and the Power of Attorney and my authority to act under the Power of Attorney
have not terminated;

(2) if the Power of Attorney was drafted to become effective upon the happening of an event or con-
tingency, the event or contingency has occurred; and

(3) if I was named as a Successor Agent, the prior Agent is no longer able or willing to serve.

_Gabrielle Rene' Bustin_
Agent Signature and Date

Printed Name of Agent, Address and Phone Number
_Gabrielle Rene' Bustin_
_8900 S. Hwy 441 Lot 2_
_Ocala, Fl. 34478_
Phone: _352. 843.2371 cell_

---

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On _July 6th_, 20_16_, before me, _Carrie M. Law_,
a Notary Public, personally appeared _Gabrielle Rene' Bustin_, who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Florida_
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Carrie M. Law_
Signature of Notary

CARRIE M. LAW
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF140957
Expires 7/10/2018

Affiant ____ Known _X___ Produced ID   Type of ID _____ (Seal)

---

©SmartLegalForms                                    LF205 Agent's Certification 6-15, Pg. 1 of 1

Deposit Date:
    02/21/2017
Deposit Amount:
    $18,500.00


Item # Account # Check/Serial # Amount

1 XXXXXX7757 1028 $18,500.00

EXHIBIT
B